## SPENCER KELLOGG & SONS, INC. *v.* HICKS, ADMINISTRATRIX, ET AL.[*]

No. 430. Argued February 16, 17, 1932.—Decided April 11, 1932.

[*] Together with No. 444, *Alexander, Administratrix, et al.* v. *Spencer Kellogg & Sons, Inc.*

Mr. D. Roger Englar, with whom Messrs. Chauncey I. Clark, Leonard J. Matteson, and George S. Brengle were on the brief, for Spencer Kellogg & Sons, Inc.

504

*Miss Elizabeth Robinson,* with whom *Messrs. Lucien V. Axtell* and *Vernon S. Jones* were on the brief, for Alexander et al.

*Mr. Lester Hand Jayne* for Roberts et al.

*Messrs. Samuel B. Seidel* and *Sidney Newborg* filed a brief for Ifill et al.

*Messrs. Walter R. Kuhn* and *George W. Riley* filed a brief for Hicks.

Mr. Justice Roberts delivered the opinion of the Court.

These cross-writs were granted in a proceeding for limitation of liability under Sec. 3, Act of March 3, 1851, c. 43,[1] initiated by Spencer Kellogg & Sons, Inc., owner of the motor launch "Linseed King," which sank on December 20, 1926, causing personal injuries and loss of life.

Kellogg & Sons is a New York corporation engaged in the manufacture of linseed oil at a number of factories, among them one at Edgewater, New Jersey, on the west shore of the Hudson River, opposite 96th Street, New York. The home office of the corporation is in Buffalo, where the chief executive officers reside. The Edgewater plant employs many workmen who live in New York. In order to ferry these men to and from the factory the company owned and operated the "Linseed King," a gasoline launch of a length of forty-five feet and a beam of ten feet, having a small wheel house forward, and behind that an enclosed cabin which occupied practically the entire deck space. The company's practice was to send the boat from Edgewater, early in the morning, to the foot of 96th Street, where the men went on board and were transported to the factory in time for their work. Although the safe load was estimated at not over sixty passengers, she had eighty-six life preservers aboard and had frequently carried more than eighty persons. This number seriously crowded her cabin, the total superficial area of which was two hundred thirty-three square feet, two lengthwise seats occupying about one-third of the space.

---

[1] 9 Stat. 635; R. S. § 4283; U. S. C., Tit. 46, § 183, as amended by § 4 of the Act of June 19, 1886, c. 421; 24 Stat. 80; R. S. § 4289, U. S. C., Tit. 46, § 188.

On the morning in question the boat left the New Jersey pier before daybreak, in charge of one man. As the New York shore was approached drift ice was encountered which had come down the river during the night and been driven to the easterly side by a west wind. The launch passed safely through the ice and reached the foot of 96th Street. There another of the company's employees, who was detailed to give general assistance and may be considered a deckhand, came on board. The launch was immediately filled from a crowd of waiting men. It is difficult to ascertain exactly how many boarded her; but the courts below have found that there were at least seventy-eight. On the return trip the thicker part of the ice towards the New York shore was successfully traversed, and when the master considered himself clear of ice he proceeded at full speed,—about seven miles an hour. Shortly thereafter a cake or floe of ice stove a hole in the boat's port bow and caused her to fill and sink in about two minutes. The result was a panic in the cabin, a rush for the exits, which were small, and one of which opened inward, thus being difficult of operation on account of the crowded condition. Some of the passengers were thrown into the river, reached floating cakes of ice, and were rescued. Thirty-five bodies were found in the cabin, but the number lost was never definitely determined.

Actions were brought in the New York courts against Kellogg & Sons by certain of the survivors and by the administrators of some of those who had been drowned. One libel was filed in the District Court for Southern New York. Claims were made by others and suits threatened. The company filed a petition for limitation and sought an injunction against all proceedings upon any claim, including those for workmen's compensation under the New Jersey act, except that no injunction was asked against the mere filing of claims with the New Jersey State Work-

men's. Compensation Bureau. The launch was surrendered, its value ascertained as $1,500, proper stipulation entered, and an order of reference made to a commissioner to receive claims. An injunction *pendente lite* was issued as prayed embracing not only the claimants, but the State Compensation Bureau, service being made upon the secretary of that body. Claims were filed, and the claimants in their answers to the petition denied the company's right to limitation.

Upon the issues so made the cause came on for hearing before the District Court, and at the conclusion of the evidence that court denied the owner's right to limit and referred all of the claims to a commissioner for report as to their validity and the amounts to be awarded. The latter recommended awards to sundry claimants. On exceptions the District Court confirmed some and altered others.

Those who were killed and injured in the disaster were of three classes: (1) Regular employees of Kellogg & Sons in the Edgewater plant; (2) Men who had applied on December 18 for work in discharging the cargo of a ship expected on that day. She did not then arrive, and they were given employment check stubs and told to return on the following day, which they did; but as she had not then docked they were advised to report again on the morning of the accident. The vessel had berthed the evening before, and if these men had succeeded in reaching the pier at Edgewater they would have been preferred in the allotment of work in discharging her cargo. (3) Men seeking employment in answer to an advertisement for laborers inserted in the New York newspapers, who had, however, not been interviewed by the company officials, and who would therefore have had to apply and be accepted upon arrival at the Edgewater pier.

The owner insisted that as the men in groups (1) and (2) were employees within the intent of the workmen's compensation law of New Jersey their remedy was exclusively under that act, and no damages could be granted to any of them or to the personal representatives of deceased members of these classes in this proceeding. No such objection was urged against awards to men in the third class. The commissioner overruled the owner's contention, held the workmen's compensation act was inapplicable, and all of the claimants should receive awards in the admiralty court. Upon exceptions the District Court reversed the commissioner's conclusions and held that those falling within the first class must be dismissed from the case, as any redress to which they were entitled was under the New Jersey act, but that the men in the second had never been actually employed, and were consequently outside the compensation law, and the commissioner's recommendations as to awards to them should be confirmed. The Circuit Court of Appeals affirmed the action of the District Court.

The petition for certiorari (No. 430) by the owner alleged error in refusing to limit liability and in not remitting the claimants in the second group to their remedy under the workmen's compensation act. Claimants of the first group also filed a petition (No. 444) asserting the court below improperly disposed of their claims, and that they were entitled to awards in the pending cause. The cases were heard together.

The first question for decision is whether Kellogg & Sons, as owner, was entitled to a decree limiting its liability. The master's negligence is not denied; indeed the owner proved that definite and peremptory instructions had been given him never to run when there was ice in the river. His disregard of these was the proximate cause of the disaster.

510

The right to limit liability turns upon whether such negligence was with the owner's privity or knowledge.[2] Both courts below, after painstaking examination of the evidence, found there was such privity or knowledge and accordingly ruled that the claim for limitation must be denied. We accept this concurrent finding. There was sufficient evidence to support it.[3]

The "Linseed King" was admittedly unfit to run through ice. This fact was known to the owner's executive officers, who had instructed one Stover, the works manager and representative of the company in charge of the Edgewater plant, that the boat should never be run through ice, and that as soon as ice showed itself in the river she was to be laid up for the winter. He was also directed that whenever there was a likelihood of the presence of ice all trips were to be made only in broad daylight, and even these were to be discontinued when ice definitely appeared. The decision as to when the ferry should be withdrawn for the winter rested with him.

In view of the weather conditions and the observation of ice in the river some days prior to the accident by several witnesses, amongst them one of Stover's own subordinates, he should not have rested upon the mere instruction to the master not to run through ice. Before allowing the ferriage operation he was under obligation to assure himself by inquiries or by personal inspection that the "Linseed King" should not incur the hazard of colliding, as she did, with ice floes in the river.

---

[2] R. S. § 4283; U. S. C., Tit. 46, § 183. "The liability of the owner of any vessel . . . for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

[3] The Hypodame, 6 Wall. 216, 223; The North Star, 106 U. S. 17, 18; The Carib Prince, 170 U. S. 655, 658; Oelwerke Teutonia v. Erlanger, 248 U. S. 521, 524.

We agree with the courts below that Stover's position as works manager of the Edgewater plant and the scope of his authority render his privity or knowledge that of the company. *Parsons* v. *Empire Trans. Co.*, 111 Fed. 202; *Oregon R. L. Co.* v. *Portland & A. S. S. Co.*, 162 Fed. 912; *Sanbern* v. *Wright & Cobb Co.*, 171 Fed. 449; aff'd 179 Fed. 1021; *Boston Towboat Co.* v. *Darrow-Mann Co.*, 276 Fed. 778. Compare *Craig* v. *Continental Ins. Co.*, 141 U. S. 638, 647. The owner was therefore chargeable with negligence in not taking measures for the safety of the passengers which the weather conditions required, *Texas & Gulf S. S. Co.* v. *Parker*, 263 Fed. 864; *The Virginia*, 264 Fed. 986; aff'd 278 Fed. 877.

It is said that the master, admittedly competent, had definite and postive instructions not to run through ice; that when he encountered ice on his trip from the New Jersey shore, it became his duty at once to abandon the trip and return to the Edgewater plant. The argument is that as the boat was seaworthy when there was no ice and instructions had been given to a competent master not to run her through ice, the owner did its full duty and cannot be held responsible as having privity or knowledge of a violation by the master of these explicit instructions. Cases such as *La Bourgogne*, 210 U. S. 95, which involved the master's failure to obey rules and instructions when on the high seas and disaster attributable to such fault, are cited. But there is a vast difference between the cases relied on and the instant one. The launch was used for ferriage over a distance of about a mile and a third. She was known to be unseaworthy and unfit if there was ice in the river. There is no analogy between such a situation and that presented in the cited cases where the emergency must be met by the master alone. In these there is no opportunity of consultation or coöperation or of bringing the proposed action of the master to the owner's knowledge. The latter must rely upon the master's obeying

rules and using reasonable judgment. The conditions on the morning in question could have been ascertained by Stover, if he had used reasonable diligence, and we think the evidence is adequate to support the finding that the negligence which caused the disaster was with his, and therefore with the owner's, privity or knowledge.

What was the duty of the admiralty court after it found the circumstances did not permit limitation of liability? Having found that certain claimants were within the scope of the workmen's compensation act the District Court refused them any awards and remitted them to the Compensation Bureau. This was approved by the Circuit Court of Appeals. But we think that the admiralty court, having taken jurisdiction and brought all claimants into concourse, should have given complete relief. *Hartford Accident & Indemnity Co.* v. *Southern Pacific Co.*, 273 U. S. 207. The petitioners in No. 444 maintain, first, that the state statute providing workmen's compensation is inapplicable to the maritime torts here in question and that they were entitled to relief under the maritime law or the death statutes of New York adopted as part of that system. Secondly, they say that the owner having invoked the jurisdiction of admiralty, enjoined prosecution of claims before the Workmen's Compensation Bureau, compelled claimants to appear in the admiralty court to try the question of limitation, and delayed for years any prosecution before the Bureau, has chosen its forum, forced them to litigate therein, and the jurisdiction so lawfully attaching cannot be surrendered in favor of that under the workmen's compensation law of the state. As we think the first contention well founded we have no occasion to pass upon the second.

Kellogg & Sons undertook the interstate carriage of passengers by water on a launch operated by its servants. This was a maritime matter. The ferriage was for the facilitation of the company's business and for its con-

venience as well as that of the employees.[4]  The injury
to the passengers resulted from negligence of the com-
pany's agents in the navigation of the launch.  It was
a maritime tort.  The rights and obligations of the par-
ties depended on and arose out of the maritime law.  A
proceeding to impose liability for such a tort is a cause
in admiralty within the meaning of Article III, Sec. 2 of
the Constitution, triable in the United States courts sit-
ting in admiralty.  *Leathers* v. *Blessing,* 105 U. S. 626,
630; *Workman* v. *New York,* 179 U. S. 552, 565; *Atlantic
Transport Co.* v. *Imbrovek,* 234 U. S. 52, 58; § 9, Judi-
ciary Act of 1789.[5]  As the tort, though maritime, was
committed upon the waters of the state of New York, the
personal representatives of those who lost their lives were
entitled to sue in admiralty and to recover as provided
by the state statute giving a remedy for death by wrong-
ful act.  *American Steamboat Co.* v. *Chase,* 16 Wall. 522,
531; *Sherlock* v. *Alling,* 93 U. S. 99; *Western Fuel Co.* v.
*Garcia,* 257 U. S. 233; *Washington* v. *Dawson,* 264 U. S.
219, 226.

The workmen's compensation law of New Jersey, the
purpose of which was to supersede the common law re-
dress in tort cases and statutory rights consequent upon
death by wrongful act, and to substitute a commuted
compensation for injury or death of an employee, irre-
spective of fault, is not applicable to the injuries and
deaths under consideration.

The decisions hold that the remedy which the compen-
sation statute attempts to give is of a character wholly
unknown to the common law, incapable of enforcement

---

[4] In such circumstances the New Jersey Compensation Law is ap-
plied by the courts of that State, which hold that the relation of
employer and employee exists during such transportation.  *DePue* v.
*Salmon Co.,* 92 N. J. L. 550; 106 Atl. 379; *Alberta Contracting Corp.*
v. *Santomassimo,* 107 N. J. L. 7; 150 Atl. 830.

[5] 1 Stat. 76, 77; Jud. Code, §§ 24 and 256; U. S. C. Tit. 28, § 41
(3); § 371 Third.

by the ordinary processes of any court, and is not saved to suitors from the grant of exclusive jurisdiction to the courts of the United States of all civil cases of admiralty and maritime jurisdiction. *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, 218; *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372; *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149; *Washington* v. *Dawson,. supra.* None of the employees or the personal representatives here concerned could have proceeded in admiralty to enforce the workmen's compensation law of New Jersey. That law has not been recognized and taken up as part of the admiralty jurisprudence of the United States.

The compensation act is inapplicable to such a maritime tort, and the injured person is entitled to his remedy under rules recognized in admiralty. *Messel* v. *Foundation Co.,* 274 U. S. 427; *Warren* v. *Morse Drydock & Repair Co.,* 235 N. Y. 445, 447; 139 N. E. 569.

In the *Jensen* case, *supra,* this Court said:

"And finally this remedy [under the compensation act] is not consistent with the policy of Congress to encourage investments in ships manifested in the Acts of 1851 and 1884 (Rev. Stats., §§ 4283–4285; § 18, Act of June 26, 1884, c. 121, 23 Stat. 57) which declare a limitation upon the liability of their owners."

Kellogg & Sons sustained towards employees injured or killed the dual relationship of a carrier by water and a general employer at its Edgewater plant.[6] Under the federal statutes the company, acting in the first capacity, was entitled to a limitation of liability unless the claimants could prove negligence with the owner's privity or knowledge. They assumed the burden of proving such negligence. They sustained it and are entitled to recover according to the rules of the maritime law, including, of course, any applicable death statute.

---

[6] See note 4, *supra.*

The court below was right in refusing a limitation of liability and in holding that the applicants for employment who had been told to return on the morning in question were entitled to awards in this proceeding; but it erred in denying awards according to the rules recognized in admiralty to the surviving employees and personal representatives of deceased employees of Kellogg & Sons, and remitting them to their remedy under the New Jersey Compensation Act. ⸲The decree is therefore reversed and the cause remanded to the District Court for further proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE join in so much of the opinion as holds that limitation of liability was rightly refused. They concur also in the conclusion that Kellogg & Sons are liable in this proceeding, but they do so upon the ground that the owner having invoked, as stated, the jurisdiction in admiralty, it cannot be surrendered in favor of that under the workmen's compensation law of the state.

MR. JUSTICE SUTHERLAND is of opinion that the petition in No. 444 is not well founded and that the decree should be affirmed.

MR. JUSTICE CARDOZO took no part in the consideration or decision of these cases.