UNITED PORTO RICAN SUGAR CO. (OF PORTO RICO), Petitioner, *v.* DISTRICT COURT OF HUMACAO ET AL., Respondents.

No. 55. Argued March 21, 1932.—Decided April 27, 1933.

*J. Henri Brown* and *Walter L. Newsom, Jr.,* for petitioner. *A. Ortiz Toro, Acting Attorney General,* and *T. Torres Pérez, Assistant Attorney General,* for Industrial Commission. *V. Brunet* for Superintendent of Insurance.

MR. JUSTICE WOLF delivered the opinion of the Court.

Perfecto Torres was an employee of the petitioner. He worked on board the tug Ana Mercedes and it may be taken for granted that he was a seaman as the word is understood. Within a short distance of the port of Humacao, while the Ana Mercedes was casting off from a flat boat or launch (*ancón de acero*), a heavy storm arose as a consequence of which Perfecto Torres was injured and died a short time thereafter. A sister of Perfecto Torres presented a claim to the Industrial Commission under the Workmen's Compensation Act. The case was appealed to the District Court of Humacao which affirmed the finding of the Industrial Commission. The amount awarded was $1,583.34.

When the claim of the workman was originally presented, the employer, the petitioner in this case, did not attempt to attack the jurisdiction of the Industrial Commission or the District Court of Humacao, but it did so later in a motion for reconsideration.

This is an application for a writ of prohibition on the ground that neither the Industrial Commission nor the District Court of Humacao had jurisdiction to try this case, inasmuch as the said jurisdiction was vested solely in the admiralty courts of the United States. The principal reli-

_ance is placed upon section 688 of Title 46 of the United States Code, page 1523, as follows:

"Recovery for injury to or death of seaman.—Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as the result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located. (Mar. 4, 1915, c. 153, section 20, 38 Stat. 1185; June 5, 1920, c. 250, section 33, 41 Stat. 1007.)"

We think the case of *Lastra* v. *N. Y. & P. R. S. S. Co.*, 2 F. (2d) 812, is a complete answer to the contention of the petitioner and our greatest difficulty in this case has been to attempt to follow the distinction attempted between that case and this one. In the *Lastra* case, *supra*, the Circuit Court of Appeals drew attention to the fact that Puerto Rico had not been so incorporated into the United States that the Constitution applied *ex proprio vigore*. Also that the admiralty provision of the Constitution did not extend to Puerto Rico unless Congress put it here by legislation, citing the Insular Cases, and *People of Porto Rico* v. *Tapia*, 245 U. S. 639. The court found no such legislation, but the reverse. It also recognized that the local legislative powers extended to all matters of a legislative character not locally inapplicable. Sections 7 and 8 of the Organic Act were then expressed in the opinion, as follows:

"Section 7. . . . All property which at the time of the cession belonged, under the laws of Spain then in force, to the various harbor works boards of Porto Rico, all the harbor shores, docks, slips, reclaimed lands, and all public lands and buildings not here-

tofore reserved by the United States for public purposes, *is hereby placed under the control of the government of Porto Rico, to be administered for the benefit of the People of Porto Rico; and the Legislature of Porto Rico shall have authority, subject to the limitations imposed upon all its acts, to legislate with respect to all such matters* as it may deem advisable. . . . "

"Sec. 8.—*The harbor areas and navigable streams and bodies of water and submerged lands underlying the same in and around the Island of Porto Rico and the adjacent islands and waters, now owned by the United States and not reserved by the United States for public purposes, be, and the same are hereby, placed under the control of the government of Porto Rico, to be administered in the same manner and subject to the same limitations as the property enumerated in the preceding section.*"

Answering the argument of the appellee in that case the court did not question that the District Court of the United States had admiralty jurisdiction so far as it applied, but held that the language giving that court jurisdiction could not be understood to impose upon Puerto Rico the uniform body of Admiralty Law that under the Constitution as now construed by the Supreme Court, obtained in the United States. The court said that the grant of jurisdiction and the grant of an enforceable right were two distinct things. It said that there was no tenable ground for holding that there was an implied public policy to create a uniformity of maritime law including Puerto Rico, and there was other reasoning. At the end of its opinion the court said: "Only the plainly expressed will of the United States is to prevail against the presumption of local control over matters of local concern," citing various cases of the Supreme Court of the United States.

While it is true that an inspection of the *Lastra* case does not show that the Circuit Court was considering section 688 of the United States Code, *supra,* and that therein no right of a seaman was clearly involved, yet its reasoning distinctly covers the idea that that section or any other similar sec-

tion is inapplicable to Puerto Rico inasmuch as we have a special and peculiar legislation applying to us.

The case of *Spencer Kellogg Co.* v. *Hicks,* 285 U. S. 502, falls within the same line as the other arguments of the petition before us. The Supreme Court in that case was simply deciding that as between a State and the United States the admiralty law applies when an accident occurs in the navigable waters of the United States, namely in the Hudson River. The case gives no greater force to the contention that the admiralty law should apply to Puerto Rico to the exclusion of the right of the Legislature to pass a Workmen's Compensation Law which would include seamen while they are within the waters of Puerto Rico, namely very close to the port of Humacao.

Reading that case a doubt might perhaps arise whether the court intended to say that the admiralty jurisdiction was exclusive. It appeared that the admiralty court had actually taken jurisdiction, but we do not care to stress this point.

Throughout the discussion in the *Spencer Kellogg* case, *supra,* it is evident that the court was talking of a maritime tort. Reading the petition in the present case there is no indication that the owner of the vessel here committed any tort. Indeed the indication is that what happened to Perfecto Torres was an inevitable accident which is another reason for doubting the application of that case.

The petitioner likewise says that the *Lastra* case supports its view. The court there said something about an enforceable right, but the use of these words does not change the fact that the admiralty law of the United States in a case like that of Perfecto Torres has not been extended to Puerto Rico. Even if we had a doubt as to whether the United States Circuit Court in the *Lastra* case had given due consideration to section 688 of the United States Code, we still should feel ourselves bound by the decision in that case. We likewise think the case of *Cromer* v. *Standard Dredging Co.,* 224 U. S. 362, has some application.

It is difficult to conceive after the *Muratti* or *Tapia* decisions that a constitutional question could arise. The control of Congress is complete. That body has shown its intention. Any doubt of the intention should be construed in favor of the greatest latitude of remedies on the part of an injured workingman. The modern tendency is to favor a systematic application of Workmen's Compensation laws.

The order of March 17, 1932, suspending proceedings in the District Court of Humacao should be annulled and the court below should proceed as if the rule to show cause had not issued.