UNITED PORTO RICAN SUGAR CO. (OF PUERTO RICO), peticionaria, *v.* LA CORTE DE DISTRITO DE HUMACAO, HON. R. ARJONA SIACA, JUEZ; LA COMISIÓN INDUSTRIAL DE PUERTO RICO y AUGUSTO R. SOLTERO, SUPERINTENDENTE DE SEGUROS DE PUERTO RICO, demandados.

No. 55.—*Sometido:* Marzo 21, 1932. *Resuelto:* Abril 27, 1933.

*J. Henri Brown* y *Walter L. Newsom, Jr.*, abogados de la peticiona-

ria; *Hon. Procurador General Interino A. Ortiz Toro* y *T. Torres Pérez, Subprocurador,* abogados de la Comisión Industrial; *V. Brunet,* abogado del Superintendente de Seguros.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Perfecto Torres era un empleado de la peticionaria. Trabajaba en la lancha de vapor "Ana Mercedes" y puede admitirse que era un marino según es entendida esta palabra. A poca distancia del puerto de Humacao, mientras la lancha "Ana Mercedes" se separaba de un ancón de acero, se desató un fuerte ventarrón, a consecuencia del cual Perfecto Torres sufrió lesiones y murió poco tiempo después. Una hermana de Perfecto Torres presentó reclamación a la Comisión Industrial de conformidad con la Ley de Indemnizaciones a Obreros. El caso fué apelado a la Corte de Distrito de Humacao, la que confirmó la resolución de la Comisión Industrial. La suma concedida fué $1,583.34.

Cuando se presentó originalmente la reclamación del obrero, el patrono, la peticionaria en este caso, no trató de atacar la jurisdicción de la Comisión Industrial ni de la Corte de Distrito de Humacao, mas lo hizo luego en un escrito de reconsideración.

La presente es una petición de auto inhibitorio fundada en que ni la Comisión Industrial ni la Corte de Distrito de Humacao tenían jurisdicción para conocer de este caso, toda vez que dicha jurisdicción residía solamente en las cortes de almirantazgo de los Estados Unidos. Se descansa principalmente en el artículo 688 del título 46 del Código de los Estados Unidos, pág. 1523, que lee como sigue:

"Indemnización por lesiones a un marino o por la muerte de éste. —Cualquier marino que sufra lesiones personales en el curso de su empleo, puede, a su elección, sostener una acción de daños y perjuicios en ley, con derecho a un juicio por jurado, y en tal procedimiento serán aplicables todos los estatutos de los Estados Unidos que modifiquen o extiendan el derecho o remedio otorgado por la ley común en casos de lesiones personales a empleados de ferrocarriles. En caso de que ocurriere la muerte de cualquier marino como resultado de tal lesión personal, el representante personal de tal marino podrá

incoar acción de daños y perjuicios en ley, con derecho a un juicio por jurado, y en tal procedimiento serán aplicables todos los estatutos de los Estados Unidos que confieren o regulan la causa de acción por muerte cuando se trata de empleados ferroviarios. La jurisdicción en tales procedimientos corresponderá a la corte del distrito en que el patrono demandado resida o en que radique su oficina principal. (Mar. 5, 1915, c. 153; sección 20, 38 Stat. 1185; Junio 5, 1920, c. 250, sección 33, 41 Stat. 1007.)

Creemos que el caso de *Lastra* v. *N. Y. & P. R. S.S. Co.,* 2 F. (2d) 812, es una respuesta completa a la contención de la peticionaria y la mayor dificultad con que hemos tropezado en este caso ha sido tratar de seguir la distinción que se ha intentado hacer entre dicho caso y el presente. En el caso de Lastra, supra, la Corte de Circuito de Apelaciones llamó la atención hacia el hecho de que Puerto Rico no había sido incorporado a los Estados Unidos en tal forma que la Constitución fuera aplicable *ex proprio vigore.* Igualmente que la disposición sobre almirantazgo contenida en la Constitución no se extendía a Puerto Rico a menos que el Congreso la trajera a esta Isla mediante legislación, citando los Casos Insulares y *Porto Rico* v. *Tapia,* 245 U. S. 639. La corte no halló tal legislación, sino lo contrario. También reconoció que los poderes legislativos locales se extendían a toda clase de cuestiones de naturaleza legislativa que no fueren localmente inaplicables. Los artículos 7 y 8 de nuestra Carta Orgánica fueron expresados entonces en la opinión del modo siguiente:

". . . toda propiedad que al tiempo de la cesión pertenecía, en virtud de las leyes de España entonces en vigor, a las diferentes juntas de obras de puertos de Puerto Rico; todas las orillas de los puertos, muelles, embarcaderos, terrenos saneados, y todos los terrenos y edificios públicos no reservados hasta ahora, por los Estados Unidos para fines públicos, *quedan por la presente bajo el dominio del Gobierno de Puerto Rico, para ser administrados a beneficio del pueblo de Puerto Rico; y la Asamblea Legislativa de Puerto Rico tendrá autoridad, con sujeción a las limitaciones impuestas a todas sus leyes, para legislar respecto a todos esos asuntos según lo estimare conveniente; . . .*"

"Artículo 8.—*La superficie de los puertos y los cursos y extensiones de aguas navegables y los terrenos sumergidos bajo ellos dentro y alrededor de la isla de Puerto Rico y de las islas y aguas adyacentes, que ahora pertenecen a los Estados Unidos y no han sido reservados por los Estados Unidos para fines públicos, quedan por la presente colocados bajo el dominio del Gobierno de Puerto Rico, para que sean administrados de la misma manera y con sujeción a las mismas limitaciones que las propiedades enumeradas en el artículo precedente; . . ."*

En respuesta a las argumentaciones de la parte apelada en dicho caso, aquella corte no dudó de que la Corte de Distrito de los Estados Unidos tuviera jurisdicción en materia de almirantazgo en los casos en que tal jurisdicción fuera aplicable, pero resolvió que las palabras que daban jurisdicción a dicha corte no podían ser interpretadas en el sentido de hacer que en Puerto Rico rigiera el conjunto uniforme de derecho de almirantazgo que de acuerdo con la Constitución, tal cual ha sido interpretada por la Corte Suprema de la nación, prevalecía en los Estados Unidos. La corte dijo que la concesión de jurisdicción y la concesión de un derecho exigible eran dos cosas distintas. Dijo además que no había fundamento de peso alguno para resolver que existía una política pública implícita para crear una uniformidad de derecho marítimo que incluyera a Puerto Rico, y hubo también otro razonamiento. Al final de su opinión la corte manifestó lo que sigue: "Solamente la voluntad clara y expresa de los Estados Unidos debe prevalecer contra la presunción de dominio local en cuestiones de interés local", citando varios casos de la Corte Suprema de los Estados Unidos.

Si bien es cierto que un examen del caso de Lastra no revela que la Corte de Circuito estuviese considerando el artículo 688 del Código de los Estados Unidos, supra, y que allí no estaba claramente envuelto derecho alguno de un marino, sin embargo, su razonamiento claramente comprende la idea de que dicho artículo, o cualquier otro similar, es inaplicable a Puerto Rico toda vez que tenemos una legislación especial y peculiar aplicable a nosotros.

El caso de *Spencer Kellog & Sons, Inc.* v. *Hicks*, 285 U. S. 502, cae dentro de la misma demarcación que los otros argumentos de la petición que tenemos ante nos. La Corte Suprema en dicho caso simplemente decidió que entre un estado y los Estados Unidos la ley de almirantazgo es aplicable cuando ocurre un accidente en las aguas navegables de los Estados Unidos, v. gr., en el río Hudson. El caso no da mayor peso a la contención de que la ley de almirantazgo debe aplicarse a Puerto Rico con exclusión del derecho de nuestra Legislatura a aprobar una Ley de Indemnizaciones a obreros que incluya a los marinos mientras éstos se hallan dentro de las aguas de Puerto Rico, o sea, muy cerca del puerto de Humacao.

Leyendo dicho caso tal vez surja una duda respecto a si fué la intención de la corte decir que la jurisdicción de almirantazgo era exclusiva. Aparecía que la corte de almirantazgo en realidad había tomado jurisdicción, más no tenemos interés en dar énfasis a este punto.

Durante todo el curso de la discusión en el caso de Spencer Kellog, supra, se hace evidente que la corte hablaba de un acto torticero marítimo. Una lectura de la petición demuestra que en el presente caso no hay indicio alguno de que el dueño de la embarcación cometiera ningún acto torticero. Es cierto que los indicios son que lo ocurrido a Perfecto Torres fué un accidente inevitable, lo cual es otra razón para dudar de la aplicación de dicho caso.

La peticionaria igualmente alega que el caso de Lastra sostiene su criterio. La corte allí dijo algo respecto a un derecho exigible, más el uso de estas palabras no altera el hecho de que la ley de almirantazgo de los Estados Unidos en un caso como el de Perfecto Torres no ha sido hecha extensiva a Puerto Rico. Aun si tuviésemos alguna duda sobre si la Corte de Circuito de los Estados Unidos en el caso de Lastra había prestado la debida consideración al artículo 688 del Código de los Estados Unidos, a pesar de ello, nos consideraríamos obligados por la decisión en dicho caso.

Igualmente creemos que el caso de *Gromer* v. *Standard Dredging Co.*, 224 U. S. 362, tiene alguna aplicación.

Es difícil concebir, después de las decisiones emitidas en los casos de Muratti o Tapia, que pueda surgir alguna cuestión constitucional. El dominio que tiene el Congreso es completo. Ese cuerpo ha demostrado su intención. Cualquier duda respecto a su intención debe ser interpretada en favor de la mayor latitud de remedios por parte de un obrero lesionado. La tendencia moderna es favorecer la aplicación sistemática de las leyes de indemnizaciones a obreros.

La resolución de marzo 17, 1932, suspendiendo los procedimientos en la Corte de Distrito de Humacao debe ser anulada y la corte inferior debe proceder tal cual si no se hubiese librado la orden para mostrar causa.

El Juez Asociado Señor Córdova Dávila no intervino.