Petition of SAUSE BROS. OCEAN TOW-ING CO., Inc., an Oregon corporation, for exoneration from, or in the alternative, limitation of liability.

Civ. No. 494–59.

United States District Court
D. Oregon.
Dec. 27, 1960.

Wood, Matthiessen, Wood & Tatum; Erskine Wood, Portland, Or., for petitioner.

Pozzi & Wilson, Portland, Or., Soriano & Soriano, Seattle, Wash., for claimant.

Kenneth W. Gale, San Pedro, Cal., for claimant Gloria Bouvia.

KILKENNY, District Judge.

This matter is before the Court on a petition for exoneration from, or limitation of, liability under the provisions of 46 U.S.C.A. § 183.

Petitioner was the owner of the Tug Columbia Queen and the cabin cruiser Curlew, a single engine boat with wooden hull, twenty-two feet in length and carrying an 85-horsepower motor. In an operation hereinafter described, the Curlew met with a disaster, as a result of which one Hunt and one Jorgenson were drowned. The administratrix of each estate has filed a claim and an answer challenging petitioner's right to either exoneration or limitation.

The Columbia Queen grounded on the beach at Siletz Bay, Oregon, on the 24th of October, 1959. A few hours later, by using a tractor and the boat's own power, the petitioner was able to move said vessel into Siletz Harbor and tied it up at Kernville. Ralph Hunt, one of the decedents, was the Master endorsed on her register at the time of the beaching. Weather conditions were not favorable for passage through the mouth of Siletz Bay until November 1. On that morning Henry Sause, Jr., president of the petitioner, boarded the Columbia Queen and went down the bay with the decedent Hunt for the purpose of crossing the bar. The weather did not permit and the vessel was returned to Kernville and arrangements made to make another trip to the "jaws" at the mouth of the bay at about 5:00 o'clock that evening to seek out the channel and the range. It was contemplated that the Curlew would be used on this trip. Decedent Jorgenson had been operating the Curlew during the course of the day and he had at least three hours' experience in operating this vessel on that day. About 5:00 p. m. Sause untied the Curlew from the dock and brought her alongside the Columbia Queen. There is substantial testimony that Sause requested Hunt and Jorgenson to join him in a trip down the bay to seek out the channel. This testimony is disputed by Sause. He claims the trip was arranged by Hunt. Sause concedes that both he and his company needed definite information as to the depth of the water at the entrance to the bay before they could move the Columbia Queen. Sause was operating the Curlew when it left the Columbia Queen and continued said operation until Jorgenson took over a considerable distance from the place of the disaster.

■ At the time of argument proctor for petitioner conceded negligence and that it was not entitled to exoneration. The testimony abundantly supports this conclusion and I find that petitioner was negligent in failing to have the anchor properly secured to the vessel, in approaching the "jaws" and the bar on an ebbing tide, in entering on an extremely dangerous operation without having other craft standing by to offer aid or assistance under the circumstances, and in using the Curlew for such dangerous operation when it had a defective shifting mechanism, transmission and clutch. Each of the said acts of negligence was a proximate cause of the decedents' deaths. I hold for decision in the future the causal relationship between the contributory negligence of each of the decedents, the effect of such negligence, and the manner in which such negligence might reduce claimants' damages.

Petitioner's proctor has made a very painstaking, earnest and able argument in favor of limitation. He argues that the Curlew was actually under the command of Hunt and under the direct op-

eration of Jorgenson, with Sause in the capacity of a sight-seer or observer. In passing on this question I must keep in mind that the business of this company was the coastwise ocean towing of logs and lumber between points in Oregon, Washington and California, that it had been engaged in such business since 1947 and that during said period of time Sause had been actively engaged as an executive officer of the firm. In fact, he had been president of the firm since 1954.

To continue with the business in which it was engaged it was essential for the petitioner to move the Columbia Queen across the bar at Siletz Bay; otherwise, an essential link would be missing from its coastwise operation. Henry Sause, Jr., in his capacity as president of the petitioner, was likewise very interested in moving this vessel across the bar into the sea. He very frankly concedes this point. The Curlew was the vessel furnished by the petitioner for the purpose of making the inspection trip which resulted in disaster. Not only did petitioner's president personally furnish the Curlew, but also personally operated the vessel on its way to the disaster and was personally on board, in his capacity as president, at that time. His interest in moving the Columbia Queen was as great, if not considerably greater, than either Hunt's or Jorgenson's. His only interest in being aboard the Curlew was to accomplish that purpose.

In claiming that he should not be charged with "privity or knowledge" as required by 46 U.S.C.A. § 183, petitioner principally relies on three cases.

1. Petition of Liebler, D.C.W.D.N.Y. 1937, 19 F.Supp. 829, involved an owner who petitioned for limitation of her liability in an accident which involved her motor boat. The turning point in that case seemed to be that petitioner had no knowledge whatsoever of the operation of the boat. This case would seem to indicate that the court required some affirmative action on the part of the owner before privity or knowledge could be shown. This requirement would seem to be against the weight of authority.

2. Cusumano v. The Curlew, D.C.D. Mass.1952, 105 F.Supp. 428, involved a collision of two fishing vessels. The Curlew was found to be at fault and limitation was sought by a co-owner who was below deck at the time of the collision. His partner was captain of the vessel and in charge of navigation at the time of collision. Of course, no such state of facts could exist in the present case. The Curlew involved in the present case is not much larger than an automobile. The president of the petitioner was with the operator at all times.

3. Blackler v. F. Jacobus Transportation Co., 2 Cir., 1957, 243 F.2d 733, is the third case cited by petitioner. In that case the court merely held that the fact that petitioner was handling the hawser aboard the tug at the time of the accident was not entirely incompatible with a limitation of liability. In other words, the fact that petitioner was aboard would not in itself establish privity or knowledge.

Of the cases cited by petitioner only Liebler supports its position that there must be some active participation by the owner before privity is shown.

■■ The burden of proving the absence of privity or knowledge rests with the shipowner. Coryell v. Phipps, 317 U.S. 406, 409, 63 S.Ct. 291, 87 L.Ed. 363; The Silver Palm, 9 Cir., 1937, 94 F.2d 776. In this case we are dealing with a corporate ownership. To establish privity or knowledge on the part of the corporation two steps must be taken: I. It is necessary to determine that there has been such participation by the corporate officer or agent as to deny him limitation, applying the same concept of privity as that applied to an individual shipowner. 3 Benedict on Admiralty, § 490, pp. 387–388, 6 ed., 1940. II. The second step involves the question of whether the negligence is that of an executive officer, manager or superintendent whose scope of authority includes supervision over the phase of the business out of which the loss or injury occurred. Spencer Kellogg & Sons v. Hicks, 285 U.S. 502, 52 S.Ct. 450, 76 L.Ed. 903.

**I.** I find that there was such personal participation by Sause as would preclude limitation if he were the owner of the vessel. Failure to exercise the duty of control will in itself be "privity or knowledge" so that the owner loses the benefit of limitation. Gilmore & Black, §§ 10–24, p. 704, 1957. The duty of control increases with the possibility of control. Spencer Kellogg & Sons v. Hicks, supra. It is the failure to exercise control when the opportunity is present which results in liability. States Steamship Co. v. United States, 9 Cir., 1957, 259 F.2d 458. Certainly, Sause, if he were the owner of the vessel, could have controlled the actions of Jorgenson and Hunt. He could have inspected and insisted on a proper securing of the anchor to the vessel and could have prevented the vessel from going into the dangerous area.

II. Privity or knowledge must be that of the managing officers of the corporation. Coryell v. Phipps, supra; Craig v. Continental Ins. Co., 141 U.S. 638, 646, 12 S.Ct. 97, 35 L.Ed. 886. The evidence is conclusive that Henry Sause was the only officer of the corporation who was working on this particular project. In other words, he would be considered as the executive officer who had supervision over this particular phase of the petitioner's operation. His actions on the day in question would preclude any thought other than that he was the executive officer of petitioner in charge. The fact that he was president of the corporation adds considerable weight to his right of supervision. The Republic, 2 Cir., 1894, 61 F. 109; Weisshaar v. Kimball S.S. Co., 9 Cir., 1904, 128 F. 397, certiorari denied 194 U.S. 638, 24 S.Ct. 859, 48 L.Ed. 1162.

The active participation theory on which the petitioner relies is certainly not followed in this circuit. The decision in States Steamship Co. v. United States, supra, is directly against such theory. This decision quotes from Gilmore & Black, (p. 696) as follows [259 F.2d 474]:

"The principle of the Limitation Act is the same as that found in the Harter Act and the Carriage of Goods by Sea Act: because of the extraordinary hazards of seaborne commerce and because the owner can exercise only a nominal control over his 'servants' once the ship has broken ground for the voyage, the owner should be entitled to exoneration from liability, or at least to a limitation of liability, for whatever happens after the ship has passed beyond his effective control. *Contrariwise, he should be held to liability for all loss resulting from his failure to exercise effective control when he had the chance.*" (Emphasis added.)

These authorities and Spencer Kellogg & Sons v. Hicks, supra, conclusively establish that "privity or knowledge" embrace acts of omission as well as commission. Petition of H. & H. Wheel Service, 6 Cir., 1955, 219 F.2d 904, is in point. In that case, as in this, the ship was being navigated by an employee of the owner. The owner was in the immediate presence of the operator at the time of the collision. There was evidence of an improper lookout, inadequate navigational lights and improper operation in a highly traveled waterway. The vessel involved was a motor cruiser which would appear to be similar to the Curlew. The Court held that there was privity and knowledge on the part of the owner and denied limitation. Petitioner and its president were chargeable with privity and knowledge when they sent the Curlew to sea with an unsecured anchor and when they thereafter failed to exercise proper control over the operation of the vessel in the respects aforesaid.

In an ordinary limitation proceeding I would be inclined to enter an order of dismissal and permit the claimants to file separate and independent actions against petitioner. However, a tremendous amount of time and effort has already been expended by the Court and proctors in the preparation and trial

of this issue. Since the issue of liability has been determined in favor of the claimants, only the amount of the damage is left for determination. Under the authority of Hartford Accident & Indemnity Co. v. Southern Pacific Co., 273 U.S. 207, 216–217, 47 S.Ct. 357, 71 L.Ed. 612, and Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903, jurisdiction of this cause is retained for the purpose of determining the amount of damage to be awarded to each claimant. I have given consideration to the impact of Lake Tankers Corp. v. Henn, 1957, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246, on Hartford and Just and hold that I have the privilege, under the facts of this case, to retain jurisdiction.

This opinion shall stand as the findings. An appropriate interlocutory decree shall be presented by proctor for claimants.