In the Matter of the Complaint of The **NATIONAL SHIPPING COMPANY OF SAUDI ARABIA**, as owner, and **Mideast Ship Management Limited,** as operator, of M/V Saudi Riyadh for Exoneration from or Limitation of Liability.

Civil Action No. 2:99cv223.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 17, 2000.

Peter F. Frost, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, Michael A. Rhine, Assistant U.S. Attorney, Norfolk, VA, for U.S.

Carter T. Gunn, Edward James Powers, Daniel R. Weckstein, William M. Dozier, Vandeventer, Black, Meredith & Martin, Norfolk, VA, Wayne D. Meehan, Freehill, Hogan & Mahar, New York City, for National Shipping Co. of Saudi Arabia and Mideast Ship Management Ltd.

## *MEMORANDUM OPINION*

REBECCA BEACH SMITH, District Judge.

This matter came before the court on an objection by the United States to the relevance of trial testimony pertaining to the training and competence level of crew members manning the USS ARTHUR W. RADFORD ("RADFORD") on the night of a collision with the M/V SAUDI RIYADH ("SAUDI RIYADH"). On direct examination, National Shipping Company of Saudi Arabia and Mideast Ship Management Limited questioned Daniel W. Chang, Commanding Officer of the RADFORD, regarding his general assessment of the training and competence level of the RADFORD crew prior to the collision. The United States objected to the testimony on grounds that it was irrelevant to determining whether the RADFORD crew acted negligently on the night in question. The court sustained the objection and excluded

the testimony pursuant to Federal Rule of Evidence 402. The court issues this Memorandum Opinion to supplement its reasoning as articulated from the bench, and to clarify the scope of its ruling, as it applies in the unique context of this limitation proceeding brought pursuant to 46 U.S.C.App. § 183(a).

### *Factual and Procedural Background*

On February 12, 1999, the United States filed an *in rem* action against National Shipping Company of Saudi Arabia, as owner, and Mideast Ship Management Limited, as operator, of the SAUDI RIYADH, for damage sustained by the RADFORD when the two ships collided on the night of February 4, 1999. National Shipping Company of Saudi Arabia and Mideast Ship Management Limited (hereinafter "limitation plaintiffs") initiated the present action by filing a complaint for exoneration from or limitation of liability pursuant to 46 U.S.C.App. § 183(a), and the suit initiated by the United States was stayed. The United States and eight personal injury claimants filed claims against the limitation plaintiffs in the present action for damages arising from the collision.[1] The limitation plaintiffs counterclaimed against the United States for damage sustained by the SAUDI RIYADH during the collision and for indemnity of any amounts paid in satisfaction of other claims arising from the collision. The action is being tried to the court without a jury.

### *Analysis*

Limitation suits, pursuant to 46 U.S.C.App. § 183(a), are unusual proceedings, available only in admiralty, whereby a shipowner may be held liable for loss caused by the negligence of its crew, and yet may limit its liability to the value of the ship and its pending freight. *See* 46 U.S.C.App. § 183(a). Under the statute, however, such limitation may be granted only if the shipowner demonstrates that it could not, through the exercise of reason-

1. All personal injury claimants have settled their claims with the limitation plaintiffs.

able diligence, "have taken action while the vessel was in port and under its authority and control that would have prevented the negligent acts at sea." *Empresa Lineas Maritimas Argentinas S.A. v. United States*, 730 F.2d 153, 155 (4th Cir.1984) (citing *Spencer Kellogg Co. v. Hicks*, 285 U.S. 502, 511–12, 52 S.Ct. 450, 76 L.Ed. 903 (1932)); *see* 46 U.S.C.App. § 183(a).

■ The unique nature of a limitation proceeding necessitates a two-pronged inquiry to determine the liability of a limitation plaintiff. *See Empresa*, 730 F.2d at 155. The court must determine, as an initial matter, what acts of negligence caused the collision.[2] *See id.* If the court finds that some negligence of the ship owned by the limitation plaintiff proximately caused the injury, the court then must proceed to the second inquiry and determine whether the shipowner may limit its liability under the statute. *See id.* More specifically, the court must determine whether the shipowner may be charged with prior knowledge of the events or conditions which caused the loss, so that the shipowner could have taken some action to prevent the loss and must now be held accountable for its failure to do so. *See id.* If the collision resulted from navigational errors that the shipowner had no reason to believe were likely to occur, limitation is granted. *See Hellenic Lines, Ltd. v. Prudential Lines, Inc.*, 813 F.2d 634, 638 (4th Cir.1987). However, if the collision occurred because the shipowner neglected its "duty to man the ship with a competent crew," staffing the ship with crew members that the shipowner knew, or should have known, were incompetent or inadequately trained, the shipowner must be held responsible for the full extent of the loss caused by its crew. *Id.*

■ In the instant case, the United States, unlike the limitation plaintiffs, has not filed for limitation of its liability and has not denied responsibility for the actions of its crew members. Accordingly, the court need only undertake the initial inquiry as to what acts of negligence caused the collision in order to determine the liability of the United States. Whether a shipowner had reason to know that its crew was inadequately trained, or was deficient in the knowledge of safe navigational techniques, is material only where the shipowner has attempted to limit its responsibility for its crew's negligence. Where, by contrast, the shipowner accepts full responsibility for its crew, the only material inquiry is whether the crew was negligent and to what extent that negligence contributed to the collision.

■ On the question of negligence, an assessment of the RADFORD crew's general training and skill level is irrelevant.[3] The sole inquiry is what, if anything, the RADFORD crew actually did on the night in question to cause the collision, and if these actions were negligent. The best trained crew may act negligently, while the most poorly trained crew may exercise exceptional care in a given circumstance. *As the United States has not attempted to deny responsibility for the actions of its crew by filing for limitation of liability, a general assessment of crew training and competence is unnecessary and irrelevant to the liability of the United States in this proceeding.*

This is not to suggest, however, that training may never be a relevant inquiry in a limitation proceeding. Though it is irrelevant to the initial determination of what acts of negligence, if any, on either side

---

**2.** If the court finds that the ship owned by the limitation plaintiff committed no error and that the collision was caused solely by the other party, the court stops at the first inquiry. The court exonerates the limitation plaintiff and awards the limitation plaintiff any damages alleged and proven to result from the other party's negligence.

**3.** Training and manning may be important matters for consideration in internal Navy administrative and disciplinary proceedings to assign responsibility for the collision within the chain of command and to prevent future accidents. However, these are internal Navy decisions not currently before this court in this limitation proceeding under the court's admiralty jurisdiction.

caused the collision, it may be highly relevant in making the later determination as to whether the limitation plaintiffs may limit their liability for the actions of their crew. In determining whether liability should be limited under the statute, the question of whether the limitation plaintiffs knew of some deficiencies in training or skill that would impair their crew's ability to navigate the SAUDI RIYADH safely is not only a relevant inquiry, it is essential and required under the law. *See Hellenic Lines, Ltd.*, 813 F.2d at 638.

This point is well-illustrated by examining evidence offered by the United States to establish the inappropriateness of limiting liability in the instant case. The United States alleges that the collision was caused by the failure of SAUDI RIYADH's Third Mate, Manuel E. Tolosa, to effectively utilize the ship's navigational equipment and to employ standard rules of navigation to avoid the collision. Alleging that the negligence of Tolosa proximately caused the collision, the United States further maintains that the limitation plaintiffs had knowledge of Tolosa's lack of skill with these navigational tools such that they should not be permitted to limit their liability for his negligence pursuant to 46 U.S.C.App. § 183(a). In support of these allegations, the United States offered the results of computerized performance evaluations ("Seafarers Evaluation and Testing System" or "SETS" tests), administered during the staffing process and maintained as part of Tolosa's personnel file, that may be interpreted to reflect a lack of skill and a need for training in the use of radar and on standard navigational rules known as the "Rules of the Road." Such evidence, though immaterial to the initial determination of whether some negligence of Tolosa caused the collision, is highly relevant to the question of whether the limitation plaintiffs knew, or should have known, of deficiencies in Tolosa's navigational skills such that it would be inappropriate to allow them to limit their liability for Tolosa's actions. Evidence tending to establish that the limitation plaintiffs had knowledge of deficiencies, which ultimately resulted in

Tolosa's inability to safely navigate the SAUDI RIYADH, causing the collision in issue, would preclude the limitation plaintiffs from receiving a limitation of liability for the negligence of their crew member. *See* 46 U.S.C.App. § 183(a); *Hellenic Lines, Ltd.*, 813 F.2d at 638. If the limitation plaintiffs cannot limit their liability, then they would be liable for the full percentage amount of damages caused by their negligence.

Accordingly, while evidence tending to establish the training and competence level of crew members is irrelevant to the initial question of negligence for all parties, it is relevant, to the extent known or discoverable by the limitation plaintiffs, to the limitation plaintiffs' ability to limit liability under the statute.

### Conclusion

For the reasons set forth above, the court **SUSTAINED** the United States' objection to the relevance of evidence pertaining to the level of skill and training of the RADFORD's crew on the issue of negligence. This ruling is likewise applicable to the relevance of the skill and training of the SAUDI RIYADH's crew on the question of whether they were negligent. However, in the unique context of the limitation proceeding pursuant to 46 U.S.C.App. § 183(a), evidence pertaining to training and competence levels, such as that offered by the United States to establish the limitation plaintiffs' knowledge of deficiencies in Third Mate Tolosa's training that ultimately caused the collision, is highly relevant to the limitation plaintiffs' ability to limit their liability for negligence of their crew. *Accordingly, evidence of training and test results of Tolosa is admitted for the sole purpose of establishing whether the limitation plaintiffs will be subject to full liability or limited liability* for the negligence of its crew.

IT IS SO **ORDERED.**