## THE FRED E. HASLER.

### PROCTOR & GAMBLE CO. v. ATLANTIC OIL TRANSIT CORPORATION.

District Court, S. D. New York.
Oct. 25, 1932.

See also (D. C.) 55 F.(2d) 389.

Haight, Smith, Griffin & Deming, of New York City (Charles S. Haight and Wharton Poor, both of New York City, of counsel), for libelant.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark, Eugene Underwood, and Adrian J. O'Kane, all of New York City, of counsel), for respondent.

KNOX, District Judge.

The above-entitled suit has engaged the attention of the court upon prior occasions, and the facts, out of which it arose, are set forth in (D. C.) 51 F.(2d) 779 and (C. C. A.) 55 F.(2d) 919. In the last-mentioned citation, the Circuit Court of Appeals affirmed the decree entered upon the opinion of Judge Patterson, reported in (D. C.) 51 F. (2d) 779. While the litigation was pending in the appellate court, the claimant-respondent asked leave to amend its answer so as to claim the benefit of the limitation of liability, provided in sections 4283, 4284 and 4285 of the Revised Statutes, and in supplementary legislation (46 USCA §§ 183–185). The relief thus prayed was granted upon a condition that has since been met and the decree on mandate of the Circuit Court of Appeals, inter alia, "ordered, that the trial of the issues raised by the amendment to claimant-respondent's answer be tried in this court upon the testimony heretofore taken in this cause with leave to either party to adduce such further proof on those issues as they may be advised."

Thereafter, claimant-respondent filed its amended answer. It consists of a repetition of the original answer with an additional article which reads: "Thirteenth: If the claimant-respondent is liable for any of the damages claimed in the libel, which it denies, the same were done, occasioned or incurred without the privity or knowledge of the claimant-respondent, as owner of said barge Fred E. Hasler, and the claimant-respondent is entitled to limit its liability to the value of its interest in said barge. * * *"

Subsequently, the claimant-respondent asked for an order requiring libelant to reply to the amended answer. The request not being opposed, libelant filed its reply, wherein it admits: "That the damages claimed in the libel were done, occasioned or incurred without the privity or knowledge of the * * * owner of the said barge Fred E. Hasler, but denies that claimant-respondent is entitled to limit its liability * * * in

said barge pursuant to * * * the United States Revised Statutes. * * *"

Libelant then proceeded to allege that: "The damages claimed in the libel were * * * occasioned * * * by reason of the breach by claimant-respondent of a personal contract between libelant and claimant-respondent, to which cause of action the statutes providing for limitation of liability are not applicable."

The trial of the issues so framed showed that the contract for handling the cargo which was subsequently lost and damaged contained no express warranty of the seaworthiness of the Fred E. Hasler. The history behind its existence is this:

In 1927, the president of Atlantic Oil Transit Corporation, Mr. Narelle, and an authorized representative of Proctor & Gamble Corporation, came to an understanding on the rates to be charged for the transportation of vegetable oils, as, if, and when the claimant-respondent should carry them.

The agreement thus made was evidenced by a letter written by Mr. Elder, libelant's representative, under date of October 4, 1927. It was in these terms:

"Referring to our recent conference in connection with the handling of bulk oil. We are agreeable to your handling by tank barge such quantities of vegetable oils as we may elect to assign to your company at rate of, viz:

"Transportation, 90¢ per ton

"Pumping, 30¢ per ton."

At some subsequent date it was agreed that the transportation rate should be at 80 cents per ton, and the understanding thus had was in force as of April 14, 1929, when arrangements were made for engaging the Fred E. Hasler for the services which resulted to the great damage to libelant. These arrangements were consummated by means of a telephone conversation which, upon April 14, 1929, Elder had with Captain Long, a tug despatcher, employed by claimant-respondent. Elder called the office of Atlantic Oil Transit Corporation and was connected with Long. The latter was requested to send a barge to the whaler, Sir James Clark Ross, to carry the oil resulting from its catches to Port Ivory, Staten Island. The time for the arrival of the barge being specified, Long gave assent and made an appropriate entry on his order sheet. In due course, the barge was delivered alongside the whaler, and was laden with oil. What then transpired has

been related in the opinions hereinbefore cited, and need not be repeated.

That Long was authorized to assign the Fred E. Hasler to the service she undertook to perform is not denied. With respect thereto, however, claimant-respondent contends that such contract as Long made was not of such a personal nature, and was not otherwise of such quality, as to foreclose its right to take advantage of the limitation of liability statutes.

Libelant, on the contrary, insists that, within the decisions having to do with personal agreements, Long's acts created an obligation upon claimant-respondent which only a payment of all damages sustained can discharge. This argument finds support, it is urged, in the aforementioned letter of October 4, 1927. In other words, it is contended that Long's action in the premises was in execution of the written agreement of the parties.

So far as the phraseology of the original libel is concerned, the theory now advanced would not appear to be the one on which the case first came into court. The original pleading made no reference to the letter of October 4, 1927. It asserted merely that upon April 14, 1929, libelant chartered the Fred E. Hasler, "for the carriage of a cargo of whale oil, at a rate of 80 cents per ton ·· ᵛ * and that * ᵗ ᵛ under and by virtue of said charter party or contract of affreightment the seaworthiness of said tank barge was warranted, including the proper manning of said barge."

A more complete examination of the foundation of the liability set up against claimant-respondent radically changes the impressions of this case which were acquired at the hearing. At that time, I felt that libelant's viewpoint had substantial support, but the evidence, in conjunction with relevant adjudications, compels a contrary conclusion.

■ The letter of October 4, 1927, it now appears, is not a contract of carriage at all. Libelant was under no obligation to furnish claimant-respondent with a cargo of oil. Nor was respondent bound to supply libelant with barges to carry such oil as it might wish to have transported. The sole subject-matter of the letter was the rate at which vegetable oils should be pumped and carried in the event that the parties, subsequent to the date of the letter, should contract in regard to the transportation of a particular cargo. The writing was such that whale oil was not included within its scope. The letter said

nothing concerning particular cargoes or particular vessels. In essence, it was but a rate sheet, and is incapable of supporting a personal warranty, express or implied, of the seaworthiness of the Fred E. Hasler, on the part of claimant-respondent. Even though the agreement on rates may be said to have been personal, because entered into by the president of claimant-respondent, it does not follow that the later·contract of carriage, out of which an implied warranty of the Hasler's seaworthiness arose, was also personal. The contract of carriage was made by Long, a subordinate employee of Atlantic Oil Transit Corporation. He was without authority expressly to bind the company to an obligation such as here is attempted to be fixed upon it, and he made no attempt to do so. Without assuming to fix the limits of his authority to contract on behalf of his employer, it is reasonably certain that his capacity as a contracting agent was not of the dignity of that possessed by the owner of a vessel. See Craig v. Continental Insurance Co., 141 U. S. 638, 12 S. Ct. 97, 35 L. Ed. 886; The Galileo (C. C. A.) 54 F.(2d) 913; The Republic (C. C. A.) 61 F. 109.

■■ As declared by the Supreme Court in Capitol Transportation Co. v. Cambria Steel Co., 249 U. S. 334, 39 S. Ct. 292, 63 L. Ed. 631, the limited liability statute should not be "cut down from its intended effect by too easy a finding of privity or knowledge on the part of owners, as also by too liberal an attribution to them of contracts as personally theirs." Adhering to this policy, and having regard for the facts as established, it is my belief that the implied warranty of seaworthiness which attached to the contract negotiated by Elder and Long cannot fairly be said to have been a personal undertaking of claimant-respondent. It may, therefore, limit its liability for the damages arising from such breach of warranty as here occurred.

■ What has been said is enough to dispose of the immediate controversy. I may add, however, that even though the contract of carriage were the personal undertaking of claimant-respondent, the result in these proceedings should be that already announced. By this is meant that a warranty of seaworthiness which arises simply from an implication of law, and which is not the express undertaking of a vessel owner, will not exclude him from relief in limitation when his ship, without his knowledge and privity, has met with disaster. Such, at any rate, would seem to be the doctrine to be drawn from Ben-

ner Line v. Pendleton (C. C. A.) 217 F. 497, affirmed 246 U. S. 353, 38 S. Ct. 330, 62 L. Ed. 770. See, also, Pocomoke Guano Co. v. Eastern Transportation Co. (C. C. A.) 285 F. 7; American Warehouse & Trading Co. v. Davison Lumber Co. (C. C. A.) 240 F. 126, 128; The Amos D. Carver (D. C.) 35 F. 665; The Ice King (C. C. A.) 261 F. 897; Quinlan v. Pew (C. C. A.) 56 F. 111.