CALIFORNIA YACHT CLUB OF LOS ANGELES v. JOHNSON.

No. 6912.

Circuit Court of Appeals, Ninth Circuit.

May 15, 1933.

Hunsaker, Britt & Cosgrove and Homer N. Boardman, all of Los Angeles, Cal., for appellant.

O'Melveny, Tuller & Myers, Albert Parker, and Frank S. Balthis, Jr., all of Los Angeles, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

SAWTELLE, Circuit Judge.

From a decree in favor of John J. Johnson, the libelant below, for $1,035.75 and costs, for personal and property injuries sustained by him, the respondent club appeals.

For a statement of facts, we summarize below the findings of the lower court, from whose decree no cross-appeal has been filed.

The appellee is a resident of Los Angeles, Cal., and the appellant has its headquarters in the same city. On August 25, 1928, the appellee, for the purpose of being transported to the vessel on which he was employed, the yacht Bonnie Doone, boarded the tender Cyc, belonging to the appellant and operated by Alex Vitol, an employee of the appellant. The appellee was carried on the Cyc as a passenger, and a small toll was collected from him, by means of his signing a slip chargeable to his employer, Roy Lacy. The appellant had no license or other authority to carry passengers for hire.

During the trip to the Bonnie Doone, Vitol asked the appellee to go below to examine the motor of the Cyc. The appellee did so, and while he was endeavoring to adjust the flow of gas into the carburetor, an explosion occurred. The appellee suffered first and second degree burns on his face, neck, and arms, "and several bodily injuries elsewhere," and was thrown into the water. The tender was virtually a total loss.

The appellee, in his libel, asked for $45.75 for medical and other aid, $165 for loss of wages while incapacitated, $75 for damages to his clothing and to other personal property, and $750 for his personal injuries. The decree was for the full amount claimed, with costs.

The court found that the accident was caused without any contributing fault or negligence on the part of the appellee, and that it was caused solely by the defective, unsafe, and unseaworthy condition of the vessel, and by the fault and negligence of the officers and employees of the appellant in permitting the vessel to be operated while in such a condition. The court also found that Vitol personally participated in the transaction resulting in the explosion and had personal knowledge of the defective and unsea-worthy condition of the motor, and that Vitol was "the only employee of the respondent or person who was charged with the duty of keeping and maintaining said motor seaworthy and in proper repair." Then follows language in the findings which is of such importance that we quote it verbatim: "None of the managing or executive officers of the respondent corporation were personally present or personally participated in the transaction resulting in the explosion of the gasoline motor of said tender 'Cyc,' nor did any of said managing or executive officers of the respondent corporation have any actual knowledge of the defective and unseaworthy condition of said motor. That said managing or executive officers had no proper or adequate system of inspection of said motor or of said tender, by themselves or by their employees, *or by any person other than Alex Vitol.*" (Italics our own.)

As its first conclusion of law, the court held: "That the knowledge of said Alex Vitol, the operator of said tender 'Cyc' as to the defective and unseaworthy condition of the motor of said tender was the knowledge of the respondent corporation, because he was the sole employee of the said respondent or person who was charged by the executive officers with the duty of keeping and maintaining said motor seaworthy and in proper repair and because said executive officers had no proper or adequate system of inspection by themselves or by their other employees, *or by any person other than the said Alex Vitol.*" (Italics our own.)

In our view, the two foregoing paragraphs are, as a matter of law, determinative of this case, when they are read in the light of the entire record.

In the first place, the lower court found that none of the "managing or executive officers of the respondent corporation" had "any actual knowledge of the defective and unseaworthy condition of said motor." Section 183 of title 46 USCA provides: "The liability of the owner of any vessel, for any * * * loss * * * incurred without the privity, or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

The appellant, in its answer, alleged that any damage and injury caused by the explosion were "occasioned and incurred without the privity or knowledge of respondent." The appellee concedes that "it may be proper to raise the issue in this manner," and cites The Scotland, 105 U. S. 24, 33, 34, 26 L. Ed.

1001, in which it was held that the rules of the Supreme Court adopted in December Term, 1871, "were not intended to prevent a defence by way of answer to a libel, or plea to an action, if the ship-owners should deem such a mode of pleading adequate to their protection," and should set up an answer containing "the defence of limited responsibility."

While finding that none of the "managing or executive officers" of the corporation had any actual knowledge of the condition of the motor, the court also held, as we have seen, as a conclusion of law, that Vitol's knowledge of the motor's condition "was the knowledge of the respondent corporation because he was the sole employee of said respondent or person who was charged by the executive officers with the duty of keeping and maintaining said motor seaworthy and in proper repair."

In view of these two holdings that, as we shall see, are contradictory in law, we must make an independent inquiry into the extent of Vitol's authority and his consequent ability or inability to bind the corporation by his knowledge or privity.

■ Vitol was in sole charge of the tender and "the only employee ordinarily stationed" at the outer harbor division of the California Yacht Club. According to Mr. Garbutt, vice president of the club, Vitol "had no managerial authority at all," but "was the caretaker and ran the launch." It could hardly be urged that his authority was greater than that of the master of a vessel, at the most.

The degree and scope of authority required to invest an employee with power to bind the corporation with his knowledge or privity are thus outlined in 58 C. J. 655, § 1140: "In any event, however, the 'privity' or 'knowledge' imputable to the corporation must be that of the managing officers or supervising agents of the corporation, or some one entitled to represent it in the premises, and, usually at least, the 'knowledge' or 'privity' of ordinary servants, employees, or agents, *including the master of a vessel*, is not sufficient to prevent limitation." (Italics our own.)

It would be torturing words out of their ordinary signification to characterize a caretaker and launch operator as a managing officer or agent of a corporation.

Each and every case quoted or cited by the appellee on this point involved an employee with far greater authority; namely, "works manager and representative of the company in charge of the Edgewater plant,"

Spencer Kellogg & Sons v. Hicks, 285 U. S. 502, 510, 52 S. Ct. 450, 452, 76 L. Ed. 903; "superintendent" of a department, In re P. Sanford Ross (C. C. A. 2) 204 F. 248, 251; "superintendent of all of the business of the company" at St. Michael, Alaska, which meant the "management of the company's entire fleet of boats in those remote waters, as well as all of its other property in that region," Parsons v. Empire Transp. Co. (C. C. A. 9), 111 F. 202, 208, certiorari denied, 183 U. S. 699, 22 S. Ct. 935, 46 L. Ed. 396; one who "managed the business of the line at the Fall River end, employed and paid the crews, told the captains when and where to go, ordered and paid for the supplies, and attended to the repairs," In re Jeremiah Smith & Sons (C. C. A. 2) 193 F. 395, 397; "general superintendent of the petitioner's operations around Boston," Eastern S. S. Corp. v. Great Lakes Dredge & D. Co. (C. C. A. 1) 256 F. 497, 501, certiorari dismissed, 250 U. S. 676, 40 S. Ct. 8, 63 L. Ed. 1202; "superintendent in charge of the petitioner's operations," In re New Jersey Shipbuilding & Dredging Co. (D. C.) 43 F.(2d) 195; "assistant manager," who "had the managing of the entire fleet, the employing of the men, and directing the boats, and watching the upkeep of the boats and doing all the duties that a manager would be supposed to do," Boston Towboat Co. v. Darrow-Mann Co. (C. C. A. 1) 276 F. 778, 779, 781, certiorari denied, 258 U. S. 620, 42 S. Ct. 272, 66 L. Ed. 794, 795.

Accordingly, we hold that Vitol was not a managing officer or agent of the Yacht Club, and that therefore his knowledge of defects in the motor, if any, could not be imputed to the corporation.

We turn next to the question of the maintenance by the company of an adequate "system of inspection," so strenuously attacked by the appellee. In Benedict on Admiralty (Fifth Ed.) Vol. 1, § 498, pp. 597–8, the rule is thus stated: "Neglect to inspect the vessel or properly to provide a system of inspection creates ordinarily such privity with a disaster arising from a defective condition of the vessel as to preclude limitation and, where the owner has delegated power to a shipmaster or other agent and has relied upon him to see to it that the vessel is properly equipped or otherwise fitted for the contemplated service, the burden of proving the competency of such representative for the work entrusted to him rests upon the owner and, unless such competency is affirmatively shown, the owner cannot limit his liability. But if a proper

person has been selected to perform such duties and has neglected them, an individual owner unaware of the neglect and of the defective condition arising therefrom may limit his liability."

In a footnote to the foregoing section, the learned text-writer observes that: "In the case of a corporate owner, the priority [privity?] and knowledge of its representative, entrusted with the superintendence over such a department of its business, would be its own."

See, also, The Annie Faxon (C. C. A. 9) 75 F. 312, 315.

Had Vitol been in command of a crew instead of operating the Cyc alone, he might have been termed the "master" of the launch. As such master, as we have seen, his knowledge would not have been the knowledge of the corporation. Surely his lack of a crew cannot enlarge his powers from those of a master to those of a managing officer or agent!

Peculiarly apposite in this connection are the words of the Supreme Court in Craig v. Continental Insurance Co., 141 U. S. 638, 647, 12 S. Ct. 97, 100, 35 L. Ed. 886: "If he was an agent at all, his powers were no greater than those of the master of a vessel, for whose negligence the owner is not liable, even though the privity or knowledge of the master exists."

As we have seen, however, the court found that the "managing or executive officers of the corporation had no proper or adequate system of inspection of said motor or of said tender, by themselves or by their employees, or by any person other than Alex Vitol." This is, of course, tantamount to saying that there *was* a proper or adequate system of inspection of the motor by Alex Vitol. We cannot say that this language of the court was inadvertent, since it is repeated almost verbatim as part of the first conclusion of law.

We advance next to the remaining question of law; namely, do the undisputed facts disclose that the corporation used due diligence in selecting Vitol as its tender operator and tender inspector? While the findings of fact are silent on the subject of due diligence as to the selection of Vitol, the uncontradicted testimony of Mr. Yocum, the superintendent of the club, who employed him, shows that ample inquiries were made as to Vitol's reliability, loyalty, ability, qualifications, and *knowledge of motors*. Furthermore, Mr. Yocum knew Vitol for nine months before he employed him, and relied upon his own knowledge of the man as well as upon the reports of others. Vitol had been in the employ of the club more than four years, in the same position, when the accident occurred. We believe that Mr. Yocum's investigation of Vitol's fitness for the minor and subordinate position of tender-operator and caretaker was ample, in so far as disclosing due diligence is concerned.

From our study of the findings of fact, therefore, we conclude that no managing officer of the appellant had personal knowledge of the condition of the motor, and that an adequate system of inspection was maintained through Vitol. We also find that, if we assume, solely for the sake of the argument, that Vitol was in any way negligent, the corporation used due diligence in selecting him for the work of operator and caretaker.

So far we have confined our inquiry chiefly to the findings of fact and the conclusions of law made by the lower court, and we have arrived at the opinion that such findings and conclusions do not support the decree.

But we do not base our decision upon that ground alone. We believe the record discloses that the managing officers and agents of the Yacht Club were not privy to any defect which might have existed in the motor; that they used due diligence in employing Vitol; that Vitol's position in the corporation was not such as to make his knowledge that of the Yacht Club; and, finally, that, about four weeks before the explosion, the motor was carefully overhauled, reconditioned and tested. Such complete reconditioning in our opinion establishes the fact that the officers of the corporation used due diligence as to making the tender seaworthy.

It is well settled that the law of limited liability is to be construed liberally in favor of the shipowner. The Princess Sophia (C. C. A. 9) 61 F.(2d) 339, 353, and authorities there quoted and cited.

Basing our conclusions, therefore, both upon the findings of fact of the lower court and upon our own independent study of the record, we are of the opinion that the appellant has made out a case calling for the limitation of its liability.

Since nothing of appreciable commercial value has been salvaged from the wreck, limitation of liability in the instant case is equivalent to extinguishment of liability.

Accordingly, the decree is reversed, and the cause is remanded to the lower court, with instructions to enter a decree for the respondent, the appellant herein.