## HOCKLEY et al. v. EASTERN TRANSP. CO.
No. 2039.

District Court, D. Maryland.
Jan. 10, 1935.

Geo. W. P. Whip, of Baltimore, Md., for libelant.

John T. Tucker and Keech, Carman, Tucker & Anderson, all of Baltimore, Md., for respondent.

CHESNUT, District Judge.

The case presented is a libel in personam brought by the Receivers of Davison Chemical Company to recover from the Eastern Transportation Company the value of a cargo of acid phosphate shipped on a barge from Baltimore, Maryland, for carriage to Norfolk, Virginia, which was lost in transportation. The answer, while denying liability for the loss, sets up in paragraph 14 the right to limit liability, if any, by the surrender of the particular barge and the tug, also belonging to the Eastern Transportation Company, which was furnishing the motive power for the carriage. To this particular paragraph of the answer the libellants filed exceptions alleging the insufficiency of the offer to surrender and submitting the contention that under the facts of the case additional barges belonging to the Eastern Transportation Company and constituting a portion of the whole flotilla must also be surrendered, including "the value of the Eastern Transportation Company's gross earnings for said voyage from Baltimore to Norfolk." The answer tendered, with regard to "pending freight" only that which would have been earned by the particular barge which was lost. The question is whether the exceptions should be overruled or sustained in whole or in part.

The facts may be briefly stated. By charter party dated January 25, 1934, the Eastern Transportation Company and the Receivers entered into a contract of carriage whereby the Transportation Company agreed to furnish the barge "Calvin" to convey acid phosphate from Baltimore to Norfolk at the stated rate of 60 cents per ton of 2440 pounds. The particular barge was without any motive power and in such cases it is well established that the owner of the barge impliedly contracts to furnish a tug or other suitable motive power to convey the shipment to its destination. Accordingly the Transportation Company caused its tug "Hilton" to take the barge Calvin in tow at the plant of the Receivers in Baltimore Harbor. Thereafter and before proceeding into the Chesapeake Bay, the tug picked up other barges, namely the "Celestine McNally" and the "Virginia," both owned by the same Transportation Company, and also the barge "John and Frederick," not owned by the Transportation Company. All the barges were loaded and, together with the tug, constituted one flotilla. On the journey down the Bay the tug anchored her barges at the mouth of the Patuxent River where, about 5 A. M., on January 29, 1934, the barge "Calvin" sank with her cargo and became a total loss. Subsequently the tug proceeded with the remaining barges to complete her voyage to Norfolk. The alleged value of the cargo of acid phosphate which was lost is said to be approximately $10,000 and the value of the tug Hilton is said to be very considerably less than that amount. The freight to be earned by the Transportation Company for the carriage of the acid phosphate which was lost was not prepaid. The effect of the Transportation Company's contention is, therefore, that if it is liable at all for the loss its liability is limited to the value of the tug Hilton, while the Receivers contend that they are also entitled to recover to the extent of the value of the barges Celestine McNally and Virginia, also owned by the Transportation Company, and constituting a part of the whole flotilla, as well as the total freight or towing charges earned by the tug Hilton for towing these barges, and also the remaining barge John and Frederick, to Norfolk.

■ The well known limitation of liability statute (USCA, title 46, § 183) permits a shipowner to limit the extent of liability incurred (without privity or knowledge of the owner) to "the amount or value of the interest of such owner in such vessel, and her freight then pending."

The legal problem is obviously to determine within the proper meaning of this statute what is the "vessel" as applied to this particular case. It is admitted by the Transportation Company that under the doctrine of Sacramento Navigation Co. v. Salz, 273 U. S. 326, 47 S. Ct. 368, 71 L. Ed. 663, based largely on the much earlier decision in The Columbia (C. C. A.) 73 F. 226, the tug Hilton together with the barge Calvin must be regarded as "the vessel"; but the Receivers contend that by proper legal construction the other barges (excluding the John and Frederick) constituting a part of the whole flotilla under the common ownership of the Transportation Company, must likewise be included as "the vessel" in this case. In addition to the cases just mentioned they cite also in support of their contention Standard Dredging Co. v. Kristiansen, 67 F.(2d) 548 (C. C. A. 2); Liverpool, etc., Navigating Co. v. Brooklyn Eastern Dist. Terminal, 251 U. S. 48, 40 S. Ct. 66, 64 L. Ed. 130, and In re O'Donnell, 26 F.(2d) 334 (C. C. A. 2) (reversed on other grounds (C. C. A.) 34 F.(2d) 925). A careful consideration of all these cases fails to convince me

that the constructive further extension of the term "vessel" in the statute here contended for is justifiable. The main argument seems to be put on a verbal consideration, that is, in some of the cases cited the court has used the phrase "the whole flotilla" as indicating in particular cases the proper extension of the term "vessel" to more than one maritime conveyance, but, as I read the cases, none of them has held that all vessels in a flotilla, although in common ownership, must be surrendered as a condition of limitation of liability other than the ones at fault in connection with the loss or those which are engaged "in a common venture." See The Eugene F. Moran v. N. Y. Cent. & H. R. R. Co., 212 U. S. 466, 475, 29 S. Ct. 339, 53 L. Ed. 600. The Kristiansen Case, supra, is probably the most instructive of the recent cases in this respect. There it was held that where two boats, one a barge and one a dredge, were associated in one undertaking although not physically connected, both must be surrendered to satisfy the claim of an injured seaman employed on one but injured on the other. The fact that the two vessels were not physically connected at the time of the accident was regarded as of no material import in determining their associated responsibility. So, conversely, in this case, it would seem legally unimportant that the several barges other than the one chartered for the carriage of the libellants' property and lost on the voyage were physically connected with the tug on the common voyage. There was physical but not legal association of these other barges with the one which was the subject of contractual relation between the parties. The fact that the tug supplied the motive power for all would seem to be of no legal consequence in this connection.

No case has been cited by counsel for the Receivers which involves a factual situation parallel to the present. The language of the statute is clearly in terms limited to "vessel" in the singular. The extension which has so far been made to include the tug furnishing the motive power is the result of necessary implication, but the necessity does not extend to the inclusion of other barges in no way embraced either expressly or impliedly in the contract of carriage made. In cases applying the limited liability statute as to what vessels in a flotilla must be surrendered, a distinction has been made between claims arising in tort and those out of contract. In this court it has been held that where a tug, towing a car float, by negligent management causes damage to another vessel by collision between it and the car float, the latter being a passive agent only, the tug only need be surrendered. The Begona II (D. C.) 259 F. 919 (decision by Judge Rose as District Judge). At the time of that decision a contrary rule seemed to prevail in some other circuits but the principle of the decision seems to have been established in accordance with Judge Rose's ruling in Liverpool, etc., Nav. Co. v. Brooklyn Eastern Terminal, 251 U. S. 48, 40 S. Ct. 66, 64 L. Ed. 130. Compare, on somewhat different facts, The Alvah H. Boushell, 38 F.(2d) 980 (C. C. A. 4). The inclusion by construction of other maritime units of conveyance, in addition to the one directly involved, in the term "vessel" as used in the limited liability act, seems by the later cases to be justified more liberally, if not exclusively, in cases arising in contract rather than in tort. See Kristiansen Case, supra. But even in contract cases the further extension of the term "vessel," and thus a further narrowing of the effect of the limited liability act, would seem to run counter to the policy of liberal construction of this act which has been quite consistently maintained by the courts since its enactment in 1851 (9 Stat. 635). Flink v. Paladini, 279 U. S. 59, 62, 49 S. Ct. 255, 73 L. Ed. 613; In re East River Co., 266 U. S. 355, 45 S. Ct. 114, 69 L. Ed. 324; California Yacht Club v. Johnson, 65 F.(2d) 245 (C. C. A. 9). It is perhaps true that certain recent tragic maritime disasters involving large loss of life have provoked public discussion as to the wisdom of the policy of limited liability to the extent now established by law, especially as it has been judicially determined that even the owner's insurance on the ship need not be surrendered (The City of Norwich, 118 U. S. 468, 6 S. Ct. 1150, 30 L. Ed. 134); but this is a question of legislative policy.

I conclude therefore that the Eastern Transportation Company may properly limit its liability without surrendering any of the barges other than the "Calvin" which was a total loss. There remains, however, the question as to whether the Transportation Company must also surrender any part of the towing charges earned by the tug Hilton for towing the other barges to Norfolk. The contention of the tug owner, the Transportation Company, is that the "freight then pending" is gratified in this case by foregoing the collection of any compensation under the contract of carriage, which was not prepaid; or in other words, that the freight money that must be surrendered is limited to what the barge Calvin would have earned

under the charter party if the voyage had been completed. On the other hand the libellants contend that the whole earnings of the tug for this voyage arising from the transportation of the other barges, must be surrendered. With respect to the barge John and Frederick, which was not owned by the Transportation Company, it is admitted that merely the towing charge made by the tug should be included; and it is also conceded that if the other barges which were owned by the Transportation Company, are properly excluded from surrender, it is only the tug's proportion of the total freight earned thereby that must be included in the surrender. The question thus presented is seemingly without precedent arising from analogous facts.

The words of the statute (46 USCA § 183) "freight then pending" have been construed to mean the *earnings* of the voyage. The Main v. Williams, 152 U. S. 122, 131, 14 S. Ct. 486, 38 L. Ed. 381; The San Simeon, 63 F.(2d) 798, 802 (C. C. A. 2); Benedict on Admiralty (5th Ed.) vol. 1, § 505. It is argued with some plausibility that if the tug must be included as "the vessel" required to be surrendered, her earnings on the voyage must also be included as "pending freight." But this still leaves for determination what constituted the voyage in the present case. It is contended on behalf of the Transportation Company that the voyage on which the tug was associated with the barge Calvin was necessarily terminated upon the sinking of the barge, and that the subsequent towing of the other barges by the tug to Norfolk was entirely unrelated to the previous legal association of the tug with the lost barge. This seems to me to be the correct view of the matter, on the established doctrine that the value of the vessel and her pending freight, in fixing the amount of her owner's liability, is to be determined at the completion of the voyage which is broken up. Thus it was said in The City of Norwich, 118 U. S. 468, at page 492, 6 S. Ct. 1150, 1156, 30 L. Ed. 134: "If, however, by reason of the loss or sinking of the ship the voyage is never completed, but is broken up and ended by causes over which the owners have no control, the value of the ship (if it has any value) at the time of such breaking up and ending of the voyage must be taken as the measure of the owners' liability. In most cases of this character no freight will be earned; but if any shall have been earned, it will be added to the value of the ship in estimating the amount of the

owner's liability. These consequences are so obvious that no attempt at argument can make them any plainer. * * * Having fixed the point of time at which the value is to be taken, the statute does the rest. It declares that the liability of the owner shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending. If the vessel arrives in port in a damaged condition, and earns some freight, the value at that time is the measure of liability; if she goes to the bottom and earns no freight, the value at that time is the criterion."

See, also, Benedict on Admiralty (5th Ed.) vol. 1, § 504; In re La Bourgogne (D. C.) 117 F. 261; Id. (C. C. A.) 139 F. 433; Id., 210 U. S. 95, 28 S. Ct. 664, 52 L. Ed. 973. In re W. E. Hedger Co., Inc., 59 F.(2d) 982 (C. C. A. 2) does not help the libellants' contention. There loaded barges towed by a tug, the ownership of the tug and barges being different, were damaged on the voyage by the fault of the tug. The barges had been chartered to a transportation company very closely associated with the tug owner. There was apparently a total compensation to be paid to the tug owner for the transportation, and the only question was whether the tug owner was justified in diminishing the amount of this total compensation by an arbitrary apportionment which it had made on its books in the ratio of 55% to the tug and 45% to the barges. It was held on the proof that the total freight earned could not be so diminished but that the whole must be surrendered as pending freight. No question was there presented as to what constituted the voyage. It does not appear from the case that the voyage was terminated as to some but not all of the barges; nor does it appear that the relation of the several barges to the tug was several and not joint.

Ralli v. N. Y. & T. S. S. Co. (C. C. A. 2) 154 F. 286, 288, is perhaps more in point here. There goods in transit from Galveston to Belgium, via New York, on through bills of lading, were damaged while on a lighter in New York Harbor. It was held that only that part of the freight to be earned by the lighter, and not the entire freight for the whole journey, or even that part accruing for the voyage from New York to Belgium, need be surrendered by the owner in limitation of liability. After referring to certain previous cases, the court said that it found in them "no authority for extending the words of the statute" her freight then pending "beyond their plain, natural, and

ordinary signification." What Congress intended and undertook to do was to relieve the owner of "such vessel" upon giving up her value and her earnings. *That the same owner may have earned something more by the operations of some other vessel which he happens to own is not material.* (Italics supplied.)

I conclude, therefore, that the exceptions to the answer must be overruled.