**In re GREAT LAKES TRANSIT CORPORA-TION, Limited, et al.**

**GREAT LAKES TRANSIT CORPORATION, Limited, et al. v. HEUSSLER et al.**

**No. 7168.**

Circuit Court of Appeals, Sixth Circuit. Feb. 7, 1936.

442

F. L. Leckie and A. E. Petersilge, both of Cleveland, Ohio (Duncan, Leckie, McCreary, Schlitz & Hinslea, of Cleveland, Ohio, on the brief), for appellants.

Henry N. Longley, of New York City (George William Cottrell and Carl A. Schipfer, both of Cleveland, Ohio, Ezra G. Benedict Fox and Bigham, Englar, Jones & Houston, all of New York City, and McKeehan, Merrick, Arter & Stewart and George William Cottrell, all of Cleveland, Ohio, on the brief), for appellees.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

MOORMAN, Circuit Judge.

On remand of this cause the appellees, assignees of the claim of the cargo owner, Quaker Oats Company, filed answer, as authorized by the opinion [63 F.(2d) 849], denying the petitioners' right to immunity from or limitation of liability, and asserting claim against the petitioners for damages to the cargo. Hearings were had on the claim, findings of facts made, conclusions of law stated, and a decree entered dismissing the petition and adjudging the appellees damages against Playfair in an amount to be ascertained on reference to a commissioner.

■ The decree in damages was based on a finding that Playfair was the owner of the Glenbogie at all times material to the litigation. Error is assigned to that finding. Since its verity is pertinent to the determination of other questions upon which decision depends, we consider it first. Evidence was introduced by appellants to show that the Great Lakes Transit Corporation owned the Glenbogie and two other vessels. This evidence consisted of a statement to that effect by Playfair, with the testimony of an officer of the Transit Corporation that the income from and expenses of operating the vessels were credited to and debited against the corporation. All three of the vessels were registered, however, in Playfair's name. He testified that the registering of them in his name was a mistake. It was proved, though, that they were registered at different times, and further that when claim was filed by the appellees against Playfair, the ownership records of the Glenbogie were transferred to the Transit Corporation, though the record titles to the other two vessels were not transferred. Playfair and his family owned more than 90 per cent. of the stock in the Transit Corporation. He was president of that corporation and had control of it. On the blanks that were filled out for registering the three vessels there appeared the heading, "Statement of Ownership by Individuals," and Playfair was stated to be the individual owner of each of them. He was also designated as the owner on the records of the American Bureau of Shipping. Playfair himself made arrangement for the carriage of the grain. Notwithstanding his testimony that the Glenbogie belonged to the Transit Corporation, we are of opinion, from the evidence as a whole, that he was the owner, and that the liability for damage to the cargo, if any there is, is his liability.

■ Immunity from liability is claimed under section 6 of the Canadian Water Carriage of Goods Act (Revised Statutes of Canada 1927, vol. 4, c. 207). This statute provides that if a shipowner exercises due diligence to make the ship in all respects seaworthy and properly manned, equipped, and supplied, neither the ship nor the owner shall become or be held responsible for loss or damage resulting from faults or errors in navigation or in the management of the ship, or from latent defects. It is contended by the appellants that under a recent decision of the Canadian courts construing this act (Paterson Steamships, Ltd., v. Canadian Cooperative Wheat Producers, Ltd., 40 Com.Cas. 95) the immunity therein given is made to depend not upon the seaworthiness of the ship, but upon the ex-

ercise by the owner of due diligence to make her seaworthy. We accept the due diligence test rather than that of the fact of seaworthiness, though we note in that connection that the trial court found not only that the Glenbogie was not seaworthy, but also that due diligence had not been exercised by the owner to make her seaworthy. This finding was made on evidence given by the witnesses in open court, and it is the established rule that a finding based on such evidence is presumptively correct and places upon the party attacking it a heavier burden than would otherwise rest upon him. Shepard v. Reed, 26 F.(2d) 19 (C.C.A.6); The William A. Paine, 39 F.(2d) 586 (C.C.A.6).

■■ The evidence shows that in laying up the barge at Midland for the winter, water was left in one of the sea cocks, with the result that ice formed in the sea cock and broke it, letting outside water into the afterpeak, from which it passed to the engine room and thence to the cargo space. It further shows that while the barge was on her way to Port Arthur to receive the cargo, she brushed against the anchor of another barge and damaged the frame of her port gangway door; that the bottom of the door extended to within five or six inches of the water level as the barge was thereafter laden to perform the contract of carriage; that after arriving at Port Arthur the door was repaired by heating the plates of the ship on the outside with a blow torch and then jacking them out from the inside. A witness for appellants testified that after this was done water from a hose was played against the outside of the door, and no leakage was shown. He did not know whether the water was played on the point where the damage had been done, nor was any other evidence offered to show that the test was a thorough one. The men using the hose did not testify. After the barge had sunk it was found that the door was sprung and leaked badly, and after she was raised it was observed that blankets had been stuffed between the door and its frame. The appellants contend that the condition of the door, as thus observed, was caused by the pressure of ice against the barge as she sank. As against this view it appeared that no such damage was done to the door on the other side of the barge and that there were no marks or signs on other parts along the barge's side to indicate pressure or striking of her by

the ice in sinking. We are of opinion that the evidence fully justified the trial court in finding that the barge was unseaworthy and that due diligence was not exercised by the owner to make her seaworthy before undertaking her voyage. The owner not having exercised due diligence to make her seaworthy, there can be no immunity from liability under the Canadian act, and this is true though the owner's dereliction had no causal connection with the loss. May v. Hamburg-Amerikanische, 290 U. S. 333, 54 S.Ct. 162, 78 L.Ed. 348; Spencer Kellogg & Sons v. Buckeye S. S. Co., 70 F.(2d) 146 (C.C.A.6).

■ The claim to limitation of liability rests on section 4283 of the Revised Statutes (U.S.C.A., title 46, § 183). That statute provides that the liability of a shipowner for loss of or damage to a cargo, if occasioned or incurred without his privity or knowledge, shall not exceed the amount or value of the interest of the owner in the vessel and her freight then pending. It has been uniformly held under this statute that where the contract is personal, there is a warranty of seaworthiness, and in such case lack of the owner's privity or knowledge of unseaworthiness causing a loss will not permit of limitation. See our former opinion, 63 F.(2d) 849; Pendleton v. Benner Line, 246 U.S. 353, 38 S.Ct. 330, 62 L. Ed. 770; Capitol Transportation Co. v. Cambria Steel Co., 249 U.S. 334, 39 S.Ct. 292, 63 L.Ed. 631; Cullen Fuel Co. v. W. E. Hedger, Inc., 290 U.S. 82, 54 S.Ct. 10, 78 L.Ed. 189; Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, 1 A.L.R. 1522; The Benjamin Noble, 244 F. 95 (C.C.A.6); Great Lakes Towing Co. v. Mill Transp. Co., 155 F. 11, 22 L.R.A.(N.S.) 769 (C.C. A.6). We do not doubt that the contract of carriage here in issue was the personal contract of Playfair. The evidence shows that he telephoned to the vice president of the Quaker Oats Company soliciting the contract for the Glenbogie. Later he conferred with the president of the Canadian Consolidated Grain Company, the chartering representative of the Quaker Oats Company, and as a result of these interviews and conferences the contract was made between the Consolidated Grain Company, representing the Quaker Oats Company, and the Inland Shipping Company, acting on behalf of Playfair. Each of these agencies had full authority to repre-

sent its principal. Plainly, therefore, the contract on behalf of Playfair was his personal contract.

 If it be assumed, as appellants contend, that the warranty of seaworthiness arising from a personal contract is not enough to defeat limitation under the statute supra, where the loss is occasioned by a subsequently occurring fault or defect, and, further, that the loss here complained of was occasioned by such fault or defect, still Playfair was not entitled to limitation until he had proved lack of his privity or knowledge of the defect causing the loss. This he failed to do. The evidence shows that the primary cause was the broken sea cock. The trial court found that the defective door was a contributing cause. If that be true, the right to limitation of damages resulting therefrom is barred under the personal contract rule and, in any view, because Playfair had knowledge of the defect. The statute does not require that knowledge be actual; it may be imputed if some one in charge for the owner had general authority to act for him and by the exercise of ordinary care could have discovered the fault. Craig v. Continental Insurance Co., 141 U.S. 638, 12 S.Ct. 97, 35 L.Ed. 886; Spencer Kellogg & Sons, Inc., v. Hicks, 285 U.S. 502, 52 S.Ct. 450, 76 L.Ed. 903; In re P. Sanford Ross (C.C.A.) 204 F. 248; Texas & Gulf S. S. Co. v. Parker (C.C.A.) 263 F. 864; Pocomoke Guano Co. v. Eastern Transp. Co. (C.C.A.) 285 F. 7; Chesapeake Lighterage & Towing Co., Inc., v. Baltimore Copper Smelting & Rolling Co. (C.C.A.) 40 F.(2d) 394. Captain Burke, the superintendent for Playfair, was present when the door was repaired and could have known whether the repairs were sufficient to make the barge seaworthy. The primary cause of the loss, the negligent failure properly to drain the sea cock, was also known to Playfair. The barge was laid up for the winter under his personal supervision, and he had ample means of knowing that the sea cock which afterward broke was not properly prepared for the winter lay up. Whether, therefore, the cause of the damage was the failure properly to drain the sea cock or was such failure in conjunction with the defective door, in either case it was known, or by the exercise of ordinary care could have been known, to Playfair, and for that reason there can be no limitation of liability under the statute.

■ The court's action in referring the case to the commissioner for a determination of the amount of the damage, after dismissing the petition and adjudging liability against Playfair, was proper. Hartford Accident & Indemnity Co. v. Southern Pacific Co., 273 U.S. 207, 47 S.Ct. 357, 71 L.Ed. 612.

The judgment is affirmed.